# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

PLAN ADMINISTRATOR FOR THE GAIL &
RICE, INC. PROFIT SHARING PLAN,

               Plaintiff,             Case Number:  10-11091

v.                                     HON. MARIANNE O. BATTANI

GAIL & RICE, INC.,

and

JOHN R. TROUBA,

               Defendants.

_____/

## OPINION AND ORDER DENYING DEFENDANT JOHN TROUBA'S MOTION
## FOR PARTIAL SUMMARY JUDGMENT AND SANCTIONS

This matter is before the Court on Defendant John Trouba's Motion For Partial Summary Judgment and Sanctions.  (Doc. 24).  Plaintiff Plan Administrator for the Gail & Rice Inc. Profit Sharing Plan ("the Plan Administrator") filed an interpleader action to determine whether Defendant Gail & Rice Inc. ("G&R") or Defendant Trouba is entitled to certain funds held by the Plan.  Trouba filed a Rule 56 motion for summary judgment on Counts I and III of Plaintiff's three-count complaint.  In that motion, Trouba also sought Rule 11 sanctions against Plaintiff Plan Administrator.  At a hearing held on November 18, 2010, the Court denied Trouba's request for sanctions and requested supplemental briefing on the issue of how Trouba's Chapter 7 bankruptcy discharge affects the current proceedings. (Doc. 35).  For the reasons that follow, the remainder of Trouba's motion is **DENIED**.

## I.     STATEMENT OF FACTS

Defendant John Trouba worked for Defendant Gail & Rice Inc. for over twenty-five years, last as the CFO. G&R sponsored the creation of the Gail & Rice Profit Sharing Plan ("the Plan") and is also the Plan Administrator. Trouba was a Plan participant. Part of Trouba's job duties included the day-to-day financial administration of the Plan. (Doc. 28 at 3).

In early 2009, G&R discovered that Trouba had used more than $200,000 of G&R's corporate credit card points for his personal benefit. This discovery prompted an investigation into the corporate accounting ledger. Id. Relevant to the instant matter, the investigation uncovered the following:

1.    On July 18, 2003, Trouba withdrew $25,000 in cash from the corporate checking account. There are no entries in the ledger that explain the corporate purpose for this withdrawal. Within an hour of the withdrawal, Trouba deposited the $25,000 in the Plan and designated the deposit as a "repayment" of a loan he previously drew on Plan assets. Two months later, he told the accounting department to post the $25,000 withdrawal as a personal expense of Jeff Bouchard, the President of G&R. Bouchard never received the $25,000 withdrawal. Trouba admits he misposted the money. Id. at 2-3; Ex. A - D.

2.    Acting on behalf of the Plan, Trouba wrote a $18,000 check to himself. On the check, he noted "Loan @ 8.25% five years." After cashing the check, Trouba indicated in the Plan ledger that the check was not a loan, but a payment to "Schawb" for a Plan investment. Id. at 4; Ex. D, F, G.

2

3.     Trouba has a number of outstanding loans drawn from Plan assets.  Though he had been repaying some of these loans, at least four of these repayments, totaling $38,327.52, were missing a record of deposit slip and/or proof of actual repayment.  Id. at 5-6; Ex. F, H.

On June 26, 2009, as a result of the investigation, G&R fired Trouba.  Id. at 6. Specifically, G&R explained they fired Trouba for misappropriating the corporate credit card points, misusing corporate funds, and misappropriating corporate funds into the Plan.  Id. Though G&R made various allegations against Trouba, including claims of fraud and embezzlement, the record is silent as to whether any criminal charges are pending.

Shortly after G&R fired Trouba, he filed for bankruptcy.  (Doc. 24 Ex. 2).  The Plan's anti-assignment clause excluded Trouba's property interest in the Plan from the bankruptcy estate.  (Doc. 24, Ex. 2; Doc. 28, Ex. I)  In his bankruptcy petition, Trouba listed G&R as a creditor and indicated it might have various "civil claims" against him.  G&R admits that (1) it received notice of Trouba's petition, (2) Trouba listed G&R as a general unsecured creditor, and (3) G&R filed no objections to the discharge.  (Doc. 24, Ex. 4).

On February 19, 2010, the Bankruptcy Court entered an order of discharge.  Id. Ex. 5.  At the time of the discharge, Trouba's balance in the Plan was $380,454.51.  (Doc. 28 at 6).  On March 4, 2010, in accordance with Trouba's election form and by order of the Bankruptcy Court, the Plan issued a rollover of $299,126.99 to Trouba's Individual Retirement Account.  (Doc. 1 at 3).  Unsure who is entitled to the remaining balance, G&R or Trouba, the Plan Administrator filed a Complaint of Interpleader and For Declaratory Judgment on March 17, 2010.  (Doc. 1).

G&R, the Plaintiff Plan Administrator, filed the instant interpleader action pursuant to Fed. R. Civ. Pro. 22(a)(1).  (Doc. 1).  Count I asks the Court to decide who is entitled to

the $25,000 "withdrawal" that Trouba alleged stole from the G&R corporate account and deposited in the Plan.  The Complaint specifically avers that the Plan Administrator has determined that the $25,000 is not appropriately part of the Plan's assets or Trouba's Plan account.  Count II seeks a declaration that the Plan should treat the $18,000 check as a credit to the Plan's assets and a debit to Trouba's Plan balance.[1]  Count III, asks the Court to determine whether Trouba actually paid the $38,327.52 originally designated as Plan "loan repayments," and if so, whether Trouba made those repayments with stolen G&R corporate funds.

On September 7, 2010, Trouba filed a motion for summary judgment on Counts I and III pursuant to Fed. R. Civ. Pro. 56.  (Doc. 24).  Within this dispositive motion, Trouba included a request for Rule 11 sanctions against the Plaintiff Plan Administrator. Id. at 7-8. At the hearing on the motion held on November 18, 2010, the Court denied Trouba's request for sanctions and ordered supplemental briefing on the issue of whether Trouba's bankruptcy discharge precludes the G&R's claims in this interpleader action.  (Doc. 35). The parties filed timely briefs and the remainder of Trouba's summary judgment motion is now before the Court.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate only when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a

---

[1]  At the hearing, Trouba's counsel suggested that Trouba will concede Count 2 and that the only dispute remaining is how much interest the Plan will require him to pay.

matter of law." <u>Anderson v. Liberty Lobby, Inc</u>., 477 U.S. 242, 251-52, (1986).  Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. <u>Celotex</u>, 477 U.S. at 323.  Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).  In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 157 (1970).  The Court "must lend credence" to the non-moving party's interpretation of the disputed facts. <u>Marvin v. City of Taylor</u>, 509 F.3d 234, 238 (6th Cir. 2007) (citing <u>Scott v. Harris</u>, 127 S.Ct. 1769, 1775 (2007)).  The non-moving party may not rest upon its mere allegations, but rather must set out specific facts showing a genuine issue for trial.  <u>See</u>, <u>Fed. R. Civ. P.</u> 56(c)(1). The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice.  Rather, there must be evidence on which the jury could reasonably find for the non-moving party. <u>Hopson v.DaimlerChrysler Corp.</u>, 306 F.3d 427, 432 (6th Cir. 2002).

## III.   ANALYSIS

The Court begins by noting some preliminary matters.  Though the captioned Plaintiff reads "Plan Administrator for the Gail & Rice, Inc. Profit Sharing Plan," the Plan Administrator (G&R) clearly brought this action for the Plan, making the Plan the real party in interest.  It is well settled that an ERISA plan, like the one in this matter, is a separate legal entity capable of brining suit. 29 <u>U.S.C.</u> § 1132(d)(1) ("An employee benefit plan may

sue or be sued under this subchapter as an entity."); Smith v. Provident Bank, 170 F.3d 609, 617 (6th 1999) ("ERISA gives plans the ability to sue and be sued in their own right."). Relatedly, it is not unusual for an employer to create or "sponsor" an ERISA plan and simultaneously act as the Plan Administrator.  In such an arrangement, the Sixth Circuit has explained that the employer wears "two hats."  See,  Hunter v. Caliber System, Inc., 220 F.3d 702, 718 (6th Cir. 2000) ("We have recognized that employers who are also plan sponsors wear two hats: one as a fiduciary in administering or managing the plan for the benefit of participants and the other as employer in performing settlor functions such as establishing, funding, amending, and terminating the trust." (citations omitted)).  Moreover, Plan Administrators routinely use interpleader actions to resolve disputes among competing beneficiaries. See generally, DaimlerChrysler Corp. Healthcare Benefits Plan v. Durden, 448 F.3d 918 (6th Cir. 2006); Alliant Techsystems, Inc. v. Marks, 465 F.3d 864 (8th Cir. 2006); Metro. Life Ins. Co. v. Parker, 436 F.3d 1109 (9th Cir. 2006); Guardian Life Ins. Co. of Am. v. Finch, 395 F.3d 238 (5th Cir.2004); Metro. Life Ins. Co. v. Bigelow, 283 F.3d 436 (2d Cir. 2002).  The routine ERISA interpleader action does not, however, have the Plan Sponsor or Plan Administrator captioned as a claimant. Here, G&R, the single entity that is both Sponsor and Administrator, *is* a competing claimant.

G&R admits this case presents a unique situation in which it finds itself on both sides of the lawsuit, albeit in separate legal capacities.  (Doc. 28 at 11).  G&R is the Plaintiff Plan Administrator who filed the interpleader action on behalf of the Plan.  G&R is also a Defendant claimant to the disputed funds.  Count I of the Complaint alleges that G&R (as interpleader claimant) has indicated to G&R (as Plan Administrator) "its belief that at least $25,000 of Trouba's Plan participant loan repayments were made by Trouba's use of Gail & Rice corporate funds taken without authorization."  (Doc. 1 at 5).  G&R concludes that

the Court should order the return of the $25,000 because it was not "appropriately" part of the Plan's assets. Id. Likewise in Count III, G&R claimant tells G&R Plan Administrator that if Trouba actually made any loan repayments, he probably made them with stolen G&R funds. Id. at 8. Though unusual, the Court adopts the preceding legal fiction and notes the arrangement is not prohibited, nor illogical under the circumstances of this case.

The Court further notes that G&R is not a competing beneficiary under the Plan; it seeks the return of corporate funds that were wrongfully placed into the Plan. The Plan Administrator explains that since Trouba has already deposited the allegedly stolen funds into the Plan's account, the Plan's anti-alienation clause prohibits the unilateral return of those funds - even if the Plan Administrator has independently determined he stole those funds. (Doc. 28, Ex. I). Therefore, the interpleader was filed to obtain a court order that will effect a transfer of remaining balance to the rightful owner.

### A.    Interpleader

A litigant in federal court may invoke interpleader via Federal Rule of Civil Procedure 22 or the Interpleader Act, 28 U.S.C. § 1335. In this case, Plaintiff Plan Administrator premised interpleader on Rule 22, basing subject matter jurisdiction of 28 U.S.C. § 1331. Rule 22 provides that "[p]ersons with claims that may expose a plaintiff to double or multiple liability may be joined as defendants and required to interplead." Fed. R. Civ. P. 22(a)(1). Rule interpleader "allows a party to join all other claimants as adverse parties when their claims are such that the stakeholder may be exposed to multiple liability." Metropolitan Life Ins. Co. v. Marsh, 119 F.3d 415, 418 (6th Cir. Mich. 1997).

"Interpleader is an equitable proceeding that 'affords a party who fears being exposed to the vexation of defending multiple claims to a limited fund or property that is under his control a procedure to settle the controversy and satisfy his obligation in a single

proceeding.'" U.S. v. High Technology Products, Inc., 497 F.3d 637, 641 (6th Cir. 2007) (quoting 7 WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 1704 (3d ed.2001)); see also, Metropolitan Life Ins. Co., 119 F.3d at 418 ("[I]nterpleader is fundamentally equitable in nature."). The Sixth Circuit has described the nature and purpose of interpleader "as a single comprehensive suit to adjudicate fully and finally all disputes arising out of claims to a fund." High Technology Products, 497 F.3d at 643 (quotations omitted).

An interpleader action generally proceeds in two stages. At the first stage, a court determines three issues: (1) whether the stakeholder has properly invoked interpleader, including whether the court has jurisdiction over the suit, (2) whether the stakeholder is actually threatened with double or multiple liability, and (3) whether any equitable concerns prevent the use of interpleader. Id. at 641 (citing 7 WRIGHT, MILLER & KANE, at § 1714). A court should allow an interpleader action to proceed to the second stage "only when the stakeholder has a real and reasonable fear of double liability or conflicting claims." Aaron v. Mahl, 550 F.3d 659, 663 (7th Cir. 2008) (citations omitted). During the second stage, a court determines the respective rights of the claimants to the fund or property at stake via normal litigation processes, including pleading, discovery, motions, and trial. High Technology Products, 497 F.3d at 641.

### B.    Defendant Trouba's Interpleader Argument.[2]

Defendant Trouba argues that the Court should dismiss the interpleader action because the Plan does not have a "real and reasonable fear of double liability." Trouba

---

[2] At the hearing, Trouba's counsel explained that for the sake of this argument, the Court can assume Trouba stole everything.

begins his argument with the undisputed premise that any claim G&R had against him was discharged in bankruptcy. He then suggests that G&R's claims against the interpled funds are essentially claims against him. To support this proposition, Trouba argues that G&R's "underlying claims" which form the basis of the interpleader counts - the allegations that Trouba took money G&R and put it into the Plan - are claims that seek to hold him personally liable. As such, they were extinguished by his discharge. He then concludes that the Plan cannot have a "real and reasonable fear of double liability" because his discharge prevents G&R from bringing these claims against Plan assets.

G&R and the Plan contend that G&R has no claim against Trouba. They argue that due to the nature of the interpleader action, G&R's claim is against the Plan for the return of stolen funds that Trouba deposited into the Plan's general assets. G&R explains that bankruptcy law should not allow Trouba to deposit stolen funds into an ERISA plan (which he excludes from his bankruptcy estate), obtain a discharge, then claim that the discharge gives him clean title. With G&R having a valid claim to the interpled Plan assets, the Plan faces a genuine threat of multiple liability.

This interpleader proceeding is currently at the second step of the first stage. At this crossroad, the Court must decide whether interpleader is appropriate under the circumstances presented to the Court. As framed by the parties, the issue becomes whether the Plan faces a reasonable fear of double liability. Mindful that "a real and reasonable fear does not require the party requesting inter-pleader to show that the claimants might eventually prevail," the Court reviews the adverse claims for a "minimal threshold level of substantiality." Aaron v. Mahl, 550 F.3d at 663 (quotations omitted). The Court explores the scope of Trouba's bankruptcy discharge to resolve this issue.

### C.    Chapter 7 Bankruptcy Discharge

In a chapter 7 case filed by an individual debtor, except for certain debts specified in § 523(a), a discharge under § 727(b) discharges a debtor from all "debts" that arose before bankruptcy.  See, 11 U.S.C. § 523(a); 11 U.S.C. § 727(b); Kennedy v. Medicap Pharmacies, Inc., 267 F.3d 493, 495 (6th Cir. 2001).  A "debt" is a "liability on a claim." 11 U.S.C. § 101(12). A "claim" is defined as:

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
>
> (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured[.]

11 U.S.C. § 101(5).  "Although § 727(b) defines the scope of a debtor's discharge, it is § 524 of the Code which governs the effect of the discharge." In re Morris, 430 B.R. 824, 827 (Bankr. W.D.Tenn. 2010) (citing In re Edgeworth, 993 F.2d 51, 52 (5th Cir.1993)).

A discharge under  § 524(a)(2) "does not extinguish the debt itself, but merely releases the debtor from personal liability for the debt." Id. at 828 (quoting In re Castle, 289 B.R. 882, 886 (Bankr. E.D.Tenn. 2003).  Otherwise known as the "discharge injunction," § 524(a)(2) provides that "[a] discharge ... operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived."  11 U.S.C. § 524(a)(2).  "The purpose of such an injunction is to protect the debtor from suits to collect debts that have been discharged in bankruptcy." In re Waldo, 417 B.R. 854, 889 (Bankr. E.D.Tenn. 2009) (quotations omitted). Section 524 makes clear that once a bankruptcy court has entered an order of discharge, "it is only a debtor's personal obligation to pay the debt that is effectively extinguished; the

debt itself remains." In re Irby, 337 B.R. 293, 295 (Bankr. N.D.Ohio, 2005) (citing Johnson v. Home State Bank, 501 U.S. 78, 83 (1991)).[3]  Accordingly, a creditor can proceed against debtor for a pre-petition debt so long as that creditor does not seek to hold the debtor personally liable.

"The case law is quite clear that, pursuant to § 524(e), a creditor does not violate the discharge injunction by proceeding in a lawsuit against a debtor in order to determine liability for the purposes of collecting from a third party...." In re Patterson, 297 B.R. 110, 113 (Bkrtcy. E.D. Tenn. 2003).  Section 524(e) provides that the discharge "does not affect the liability of any other entity on, or the property of any other entity for, such debt."  11 U.S.C. §524(e).  Although § 524 "prohibits actions brought to collect a discharged debt from the debtor, it permits suits - even those brought to collect on debts a debtor has discharged - that formally name the debtor as a defendant but are brought to collect from a third party." In re Paul, 534 F.3d 1303, 1307 (10th Cir. 2008) (citations omitted); see also, In re Edgeworth, 993 F.2d  at 54 ; In re Hendrix, 986 F.2d 195, 197 (7th Cir.1993).

---

[3]  Relatedly, a creditor's *in rem* interest in a debtor's property is unaffected by the discharge:

> [T]he discharge injunction limited to solely a debtor's personal liability, a creditor's *in rem* interests in a debtor's property will pass through bankruptcy as a legally enforceable interest, notwithstanding that the exercise of that interest will operate to deprive the debtor of their interest in the property; and also notwithstanding that the *in rem* interest was incidental to the debt giving rise to the debtor's personal liability.

In re Irby, 337 B.R., at 295 (citing Johnson v. Home State Bank, 501 U.S. 78, 83 (1991)); see also, In re Lewis, 423 B.R. 742, 748 (Bankr. W.D.Mich. 2010) ("[A] bankruptcy discharge extinguishes only one mode of enforcing a claim-namely, an action against the debtor in personam-while leaving intact another-namely, an action against the debtor in rem." (quoting Johnson, 501 U.S. at 84)).

In case after case, the courts applying § 524 have reconfirmed the basic principle that creditors whose claims have been discharged vis-a-vis the debtor can recover on the same claims from third parties.  See generally,  In re Jet Florida Sys., Inc., 883 F.2d 970, 973 (11th Cir.1989) (suit against debtor's insurance carrier); In re Sandy Ridge Dev. Corp., 881 F.2d 1346, 1351 (5th Cir.1989) (suit against debtor's guarantor);  United States v. Anderson, 366 F.2d 569, 571 (10th Cir.1966) (same);  In re Morris, 430 B.R. 824, 827 (Bkrtcy. W.D. Tenn. 2010) (suit against debtor's insurance carrier); In re Castle, 289 B.R. 882, 886 (Bankr.E.D.Tenn.2003) (same); United States v. Quinones, 36 B.R. 77, 79 (D.P.R.1983) (suit against co-maker of note); In re Fasse, 40 B.R. 198, 199-200 (Bankr.D.Colo.1984) (suit against state "Recovery Fund" established for satisfaction of judgments recovered against bankrupt real estate brokers and salesmen).  Though the reported opinions generally confront issues of third party liability on pre-petition discharged debts in the insurance context, the Court extracts from these decisions the general proposition that "the discharge injunction is intended for the benefit of the debtor; it is not meant to affect the liability of third parties or to prevent establishing such liability through whatever means required."  In re Patterson, 297 B.R. at 113.

Additionally, as a matter of statutory interpretation, "§ 524(a) does not, on its face, preclude the determination of the debtor's liability upon which the damages would be owed by another party." In re W.G. Wade Shows, Inc., 234 B.R. 185, 188 (Bankr. M.D.Fla. 1999) (citation omitted).  Simply stated, the discharge injunction does not preclude the determination of a debtor's liability, upon which damages would be owed by another party. In re Morris, 430 B.R. at 828.

### D.     Trouba's Bankruptcy Discharge Applied in this Case

Trouba's bankruptcy discharge does not prevent the Plan from maintaining this interpleader action.  Though G&R is proceeding to collect a discharged pre-petition debt, G&R does not violate the discharge injunction because it seeks recovery of the stolen funds from the Plan, not Trouba.  There is no doubt that the primary dispute here is between G&R and Trouba.  The Plan is a neutral party.  As discussed above, Trouba characterizes this "primary dispute" as an act to collect on a pre-petition debt as a personal liability.  The Court disagrees.  Here, in the event G&R obtains a favorable judgment, it will be satisfied from the Plan's general assets.  Trouba cannot escape the fact that he will not be personally liable on that judgment.  The record is clear that G&R does not seek to hold Trouba personally liable for the return of these funds.  G&R is proceeding as an interpleader claimant to decide Trouba's liability for the purposes of collecting a pre-petition debt from a third party - the Plan.  In this sense, he becomes a token defendant who, though nominally liable, suffers no actual loss.  Since Trouba's liability operates only as a prerequisite to G&R's recovery against the Plan, the discharge inunction is no obstacle to G&R's interpleader claims.

Besides the above, a second reason explains why Trouba's discharge does not preclude G&R's interpleader claims.  It is well settled that  "[a] debtor may not discharge debts against property in which he does not have a legal or equitable interest."  In re Gendreau, 191 B.R. 798, 802 (9th Cir. BAP 1995) (citing 11 U.S.C. §541(a)(1)) aff'd, 122 F.3d 815 (9th Cir.1997); see also, In re Gomez, 206 B.R. 663, 666 (Bankr. E.D.N.Y. 1997); Holland v. Knoll, 202 B.R. 646 (D.Mass. 1996).  Under Michigan Law, "a thief has no title in the property that he steals."  In re Newpower, 233 F.3d 922, 929 (6th Cir. 2000) (citing Morgan v. Hodges, 50 N.W. 876 (Mich. 1891)).  As requested by Trouba, the Court assumes the money deposited into the Plan was in fact stolen from G&R.  Since Trouba

13

never had legal or equitable title, his discharge simply does not apply to the stolen money. To hold otherwise would encourage debtors to steal property, obtain a discharge, then claim the discharge vests them with title superior to the true owner. Congress did not design the Bankruptcy Code to reward thieves. See, Marrama v. Citizens Bank of Mass., 549 U.S. 365, 367 (2007) ("The principal purpose of the Bankruptcy Code is to grant a 'fresh start' to the 'honest but unfortunate debtor." (citations omitted)). Moreover, such a holding would be contrary to well established bankruptcy law. See, In re Hunter, 380 B.R. 753, 780 (Bankr. S.D.Ohio, 2008) (The Bankruptcy Code does not give a debtor "any greater interest in the property than the debtor would have had outside the bankruptcy context." (quotations omitted); In re Minter, 314 B.R. 164, 168 (Bankr. W.D.Tenn. 2004) (debtor "succeeds to no greater interest in an asset than that held by the debtor at the time the bankruptcy petition is filed." (quotations omitted). Accordingly, G&R's interpleader claim against the Plan is not within the scope of Trouba's discharge.

## IV.   CONCLUSION

For the reasons stated above, the Court finds that the Plan faces a reasonable fear of multiple liability because Trouba's discharge does not preclude G&R's claim against Plan assets. The Court further finds this interpleader action appropriate under the circumstances. Therefore, Defendant Trouba's Motion For Partial Summary Judgment and Sanctions (Doc. 24) is **DENIED**.

**IT IS SO ORDERED.**

s/Marianne O. Battani
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE

Dated: <u>January 13, 2011</u>

## CERTIFICATE OF SERVICE

Copies of this Order were served upon counsel of record on this date by ordinary mail and/or electronic filing.

s/Bernadette M. Thebolt
Case Manager

15